# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 1:21-CR-00267 JLT |
|---|---|
| Plaintiff, | ORDER DENYING MOTION TO SUPPRESS (Doc. 22) |
| v. | |
| JACK ZACHARY SCONIERS, IV, | |
| Defendant. | |

Jack Zachary Sconiers, IV moves to suppress all evidence obtained as a result of the placement of a Global Positioning System tracking device on the car he was driving and the subsequent search of it. Sconiers contends that the GPS warrant was deficient because it lacked sufficient information to establish probable cause and was based upon an affidavit that included a false statement or a statement made with reckless disregard as to its veracity. He also maintains that even if the warrant was valid, his status as a probationer did not justify the search of the car. Because the Court finds that the GPS warrant was supported by probable cause and was not premised upon false or recklessly untrue statements, and because the car search was supported by reasonable suspicion and, alternatively, was a proper inventory search incident to impoundment, the motion is **DENIED**.

## I.    Background

The pertinent facts are largely drawn from Detective Leona's July 28, 2021, police report (Doc. 22-1 ("Ex. A")) and the June 30, 2021, search warrant (Doc. 22-6 ("Ex. F")), both of which

were attached to the defendant's motion, along with other related documentation. The parties do not appear to dispute the relevant facts for purposes of this motion.

Sconiers is on active probation in connection with a felony conviction in state court for kidnapping in violation of California Penal Code 207(a). ((Ex. A" at 1.) As a term of his probation, he agreed to submit to "search and seizure." (Doc. 22-2 ("Ex. B") at 2.) At a January 24, 2020, probation review hearing, Sconiers was found in substantial compliance with the terms of his probation. (Doc. 22-4 ("Ex. D") at 13.) However, he failed to appear at a subsequent hearing, and the court issued a warrant for his arrest on October 23, 2020. (*Id*. at 14.) As a result of his felony conviction and probation terms, Sconiers is prohibited from possessing firearms and ammunition. (*See* Ex. A at 1.)

In February 2021, Fresno County Sheriff's Office Detective Evan Leona, a member of the Multi-Agency Gang Enforcement Consortium ("MAGEC"), began monitoring a Facebook account connected to Defendant. (Ex. A at 1.) On February 11, 2021, Sconiers posted a video on Facebook of himself sitting in a vehicle and pointing a handgun with an extended magazine at the camera. (*Id*. at 2.) On May 14, 2021, Sconiers posted a video of himself showing an AR-15 style rifle while driving a car with the interior markings of a Porsche. (*Id*.) In that video, he detaches the magazine, revealing ammunition, and then reattaches the magazine to the rifle. (*Id*.) On May 19, 2021, Sconiers posted a live video of a Glock handgun with an extended magazine, held in front of the steering wheel of a Porsche. (Doc. 22-8 ("Ex. H") at 7.) Although he is not obviously shown in that video, Sconiers posted the following text with the video: "My kinda day Horse playing with the stick." *Id.* at 7.

According to Detective Leona, Sconiers is "known to drive a purple Porsche Cayenne." (*Id*.) Detective Leona also indicated in both his police report and search warrant affidavit that the Porsche was registered to the defendant as the owner. (*Id*. at 2; Ex. F. at 5.) It is undisputed that, in fact, the Porsche was registered to the defendant's father, Jack Zachary Sconiers, Jr., rather than to Defendant, Jack Zachary Sconiers, IV. (Ex. E at 26.)[1]

---

[1] That being said, the Court is perplexed by the ownership records of the vehicle submitted by Mr. Sconiers. It appears that on April 19, 2021, the seller of the car filed a notice of release of liability with the Department of Motor Vehicles, indicating the new owners were *both* the "Jack Sconiers" and "Jack Z. Sconiers Jr." (Ex. E at 22, 27) A few months later, on August 5, 2021, the documents indicate that "Jack Sconiers" purported to gift the car to Debra Brown, the defendant's girlfriend. *Id.* at 23. 29-31, 34.

On May 25, 2021, police conducted a traffic enforcement stop on the Porsche, but Sconiers was not in the vehicle. (Ex. A at 2.) Instead, his girlfriend, Debra Brown, was driving. (*Id*.) After she consented, police searched the car, but found no weapons. (Ex. F at 5.)

On June 30, 2021, Fresno County Superior Court Judge Heather Jones authorized a warrant, which allowed Detective Leona and other MAGEC detectives to place a GPS tracker on the Porsche. (Ex. F.) The tracker was placed on the vehicle while it was in the driveway of residence of defendant's father. (Ex. A at 2.)

On July 28, 2021, detectives observed the tracking on the Porsche Cayenne and saw that the vehicle traveled from Phoenix to Las Vegas, and then to Bakersfield, California. (Ex. A at 3-4.) Detectives traveled to Selma, California, and observed the Porsche Cayenne driving northbound on Highway 99. (*Id*.) Officers observed the vehicle to have tinted windows and an expired registration, in violation of the California vehicle code. (*Id*.) Detectives also observed that Sconiers was driving the car. (*Id*.) The officers on scene were aware that Sconiers had an outstanding felony warrant for his arrest. (*Id*.)

The police stopped the car and they ordered Sconiers and two passengers out of the vehicle. (Ex. A at 3.) Their search of the vehicle recovered a .40 caliber Glock 22 with an extended 31 round magazine inside the bottom of the back bench seat, and an unloaded 9mm magazine in a bag in the trunk of the vehicle. (*Id*.) The officers arrested Sconiers and the car was towed. (*Id*.)

**II.     Analysis**

    **A.     General Fourth Amendment Standard**

The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Evidence obtained in violation of the Fourth Amendment may be subject to suppression under the exclusionary rule. *See United States v. Willy*, 40 F.4th 1074, 1089 (9th Cir. 2022) (citing *Wong Sun v. United States*, 371

U.S. 471, 485–88 (1963)).

### B.      Challenges to the GPS Warrant

Sconiers contends that the GPS warrant was deficient because it lacked sufficient information to establish probable cause and was based upon an affidavit that included a false statement or at least a statement made with reckless disregard as to its veracity. (Doc. 22 at 12–16.)

#### *i.      Defendant Has Standing to Object to the GPS Warrant*

As a threshold objection, the Government argues that Sconiers does not have standing to challenge the GPS warrant because he does not own the subject vehicle. Indeed, an individual seeking to exclude evidence allegedly obtained in violation of the Fourth Amendment must have "standing" to challenge the illegal conduct that led to the discovery of the evidence. *United States v. Pulliam*, 405 F.3d 782, 785–786 (9th Cir. 2005) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). *See also Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) ("Whether a warrant is required is a separate question from . . . whether the person claiming a constitutional violation has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge."). The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (citation omitted). "To invoke the protections of the Fourth Amendment, a person must show he had 'a legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). To establish a legitimate expectation of privacy a person must show (1) a subjective expectation of privacy (2) that society is prepared to recognize as objectively reasonable. *Caymen*, 404 F.3d at 1199

The government relies heavily on *Jones* to suggest that Sconiers does not have standing to challenge the GPS warrant because he cannot establish a legally cognizable property interest in the Porsche. (Doc. 24 at 9.) In *Jones*, the government did not challenge Jones' standing and in fact conceded that the defendant was the "exclusive driver" of the vehicle in question. *Id*. at 565 U.S. 404 n. 2. The Court noted, in a footnote, that even though Jones did not own the vehicle in question he "had at least the property rights of a bailee," an interest which the Court deemed sufficient to confer Fourth Amendment standing. *Id*. The government quotes the following language from a concurrence authored by Justice Alito:

4

> In the present case, the Fourth Amendment applies, the Court concludes, because the officers installed the GPS device after respondent's wife, to whom the car was registered, turned it over to respondent for his exclusive use. *See ante*, at 951. But if the GPS had been attached prior to that time, the Court's theory would lead to a different result. The Court proceeds on the assumption that respondent "had at least the property rights of a bailee," *ante*, at 949, n. 2, but a bailee may sue for a trespass to chattel only if the injury occurs during the term of the bailment. See 8A Am. Jur. 2d, Bailment § 166, pp. 685–686 (2009). So if the GPS device had been installed before respondent's wife gave him the keys, respondent would have no claim for trespass—and, presumably, no Fourth Amendment claim either.

*Id*. at 425. To the extent that the government is quoting this passage to establish that the only way a defendant can establish standing to challenge a GPS warrant of this nature is to have a formal ownership interest in the vehicle, this assertion is misplaced. Though Justice Alito's concurrence points out potential pitfalls with the majority's conclusion that Jones had standing based upon the "bailee"-type property rights Jones possessed, it does not suggest that being an owner or bailee is the only way to obtain standing to bring a Fourth Amendment challenge. To the contrary, the majority opinion specifically explains that the "common-law trespassory test" it applied in *Jones* did not displace the reasonable-expectation-of-privacy test articulated in *Katz v. United States*, 389 U.S. 347 (1967). *See Jones*, 565 U.S. at 409 ("The *Katz* reasonable-expectation-of-privacy test has been added to, but not substituted for, the common-law trespassory test.").[2]

The Court therefore turns to the question of whether Sconiers can establish a reasonable expectation of privacy in relation to the Porsche notwithstanding the fact that he is not a registered owner. "One who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it. More difficult to define and delineate are the legitimate expectations of privacy of others." *Byrd*, 138 S. Ct. at 1527. In general, a person does not possess a

---

[2] Relatedly, the government quotes a footnote from *Lyall v. City of Los Angeles*, which stated "[t]he district courts that have addressed this question post-*Jones* take the same view that a sufficient ownership interest is required to confer standing." (9th Cir. 2015). To the extent the government is attempting to rely on *Lyall* to establish that Sconiers must have a legally protected ownership interest in the Porsche to have standing, the Court is not convinced. The Ninth Circuit acknowledged that having a legally protected ownership interest is not the only pathway to Fourth Amendment standing by explaining that the *Lyall* plaintiffs "must rely on *Katz's* reasonable expectation of privacy framework," because they had not asserted any ownership interests in the places searched. ; *see also United States v. Figueroa–Cruz*, (N.D. Ala. 2012) ("Under the reasonable expectation of privacy test ownership, and presumably a legal bailment[,] while perhaps factors to be considered, are not dispositive . . . . In *Jones* however, the attachment of the GPS device only becomes a search within the meaning of the Fourth Amendment precisely because of an actual property interest." (brackets omitted) (quoted with approval in *Lyall*, 807 F.3d at 1188 n. 9).

reasonable expectation of privacy in a vehicle in which he has <u>no</u> lawful ownership or possessory interest. *Rakas*, 439 U.S. at 148–49. For example, one cannot have a reasonable expectation of privacy in a stolen vehicle. *Byrd*, 138 S. Ct. at 1529.

However, "possessory or ownership interests" are not narrowly defined. *United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006). "A reasonable expectation of privacy may be shown 'either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Id*. (citations omitted). Even though a defendant may lack an ownership interest, a defendant may still have standing to challenge the search upon showing of "joint control" or "common authority" over the property searched. *Id*. at 1198. In *Thomas*, the Ninth Circuit stated that "[c]ommon authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes.'" *Id*. (citation omitted). In *United States v. Portillo*, 633 F.2d 1313, 1317 (1980), for example, a defendant had standing to challenge the search of a friend's car because the owner had given him permission to use the vehicle and the defendant was driving the vehicle at the time of the stop. In contrast the passenger in the vehicle lacked standing because the passenger could not assert a property or possessory interest in the vehicle. *Id*.

Sconiers contends that there is sufficient circumstantial evidence to demonstrate that he was a lawful user of the car. *See United States v. O'Hara*, No. 2:12-CR-00147-KJD, 2013 WL 4101892, at *10 (D. Nev. Aug. 13, 2013) (relying on inference from circumstances to find that defendant had standing to challenge search). The Court agrees. The search warrant affidavit indicates that Sconiers was "known to drive" the Porsche (Ex. F. at 5); the car was not reported stolen (Ex. G at 2); it was registered to Sconiers' father (*id*.; Ex E); and was parked at an address associated with Sconiers (Ex. G at 4). As Sconiers indicates "[t]aken together, these facts establish that [he] was permitted to drive the car." (Doc. 26 at 2.) The Court agrees.

### ii.     *Probable Cause Supports the GPS Warrant*

After *Jones*, a warrant is required to place a GPS unit on a suspect's car. 565 U.S 400. It is undisputed that Detective Leona applied for and received a warrant to place a GPS unit on the Porsche. Sconiers argues that the warrant application was deficient because it failed to set forth probable cause that evidence of a crime would be uncovered by the use of a GPS tracking device.

6

(Doc. 22 at 12.) Sconiers argues that the GPS warrant "does not describe with particularity how a GPS tracker would lead to evidence of a crime. In other words, there is no nexus between the item to be tracked and the crime which the investigative tool is supposed to uncover." (Doc. 22 at 14.) More specifically, Sconiers suggests that the warrant was insufficient because Detective Leona did not possess information suggesting he "regularly" possessed a firearm. (Doc. 26 at 4.) Relatedly, Sconiers faults the warrant for failing to "set out with any particularity how the officers knew that [he] would be driving it when they searched it." (*Id*. at 3.) To illustrate this point, Sconiers points out that "when the officers determined the Porsche was driving on Highway 99 from Bakersfield, they had to physically drive next to the window to determine who was driving it." (*Id*. at 3.)

       The government contends that the affidavit was sufficient because it established (1) that Sconiers was violating the law by possessing firearms and ammunition, which is prohibited because of his status as a felon; and (2) that there was an active warrant for Sconiers arrest for failure to appear in Court. (*Id*. at 11.) The Court agrees. The affidavit explained that Sconiers was a convicted felon on active probation for a state kidnapping charge and that there was an outstanding felony warrant (dated October 23, 2020) for his arrest for a probation violation. (Ex. F at 5.) The affidavit further explained that MAGEC detectives had been looking for Sconiers for several weeks and that the address probation had on file for him was occupied by an unrelated family. (Ex. F at 6.) The affidavit indicated that Sconiers was "known to drive" the Porsche, and that in mid-May 2021, Defendant had posted on Facebook several videos of himself holding firearms while driving a car like the Porsche. (*Id*.) The attachments to the warrant application also reveal that he had posted an earlier Facebook Live video of himself in a similar car holding a firearm. (*Id*. at 17.) The affidavit also establishes that when detectives attempted a traffic stop on the Porsche on May 25, 2021, Sconiers was not in the vehicle. (*Id*. at 6.) Finally, the affidavit plainly explains that while MAGEC officers located the Porsche parked in Sconiers' father's driveway, law enforcement knew Sconiers' father to be "extremely hostile and uncooperative with law enforcement. (*Id*. at 6.) "Due to officer safety hazards of hostility to law enforcement, and the likelihood of illegal firearms," any attempt to approach the house was deemed "futile" and likely to "jeopardize the integrity of the investigation." (*Id*.) As a result, the use of the GPS tracker was requested to assist in "apprehending [Defendant] on his active warrant and

conducting a probation search of his person and vehicle to recover[] illegal firearms." (*Id*. at 6-7.)

The Court finds that the affidavit established that Sconiers unlawfully possessed firearms and ammunition, which was both prohibited by his status as a felon and by the terms of his probation. The affidavit also sufficiently linked Sconiers' unlawful possession to the Porsche on more than one occasion by way of the Facebook videos. Finally, the affidavit also revealed that there was an active warrant for Sconiers' arrest. Overall, the affidavit established that it was likely that locating the vehicle would reveal both the location of the Sconiers and evidence of a crime.

Sconiers correctly points out (Doc. 26 at 3) that using a GPS tracker to find a wanted person distinguishes this case from certain other GPS tracker cases, such as *Jones*, 565 U.S. 400 (GPS tracker used to connect the defendant with drug stash house); *United States v. Korte*, 918 F.3d 750 (9th Cir. 2019) (GPS tracker used to help connect the defendant to string of robberies). The absence of caselaw discussing this type of use does not mean that the use is improper. In fact, California Penal Code Section 1524(a)(6) authorizes the use of a search warrant when there is an outstanding warrant to arrest a person.

Defendant also argues that the "link between the alleged criminality and the GPS tracker is too attenuated to establish probable cause" because the affidavit "relied on stale, non-specific information" and "conflates the probable cause needed to search a vehicle with the probable cause needed to affix a GPS tracker." (Doc. 26 at 3.) An affidavit contains stale information if it fails to contain facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968)). "However, '[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness.'" *Id* (quoting *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988)). "Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (*quoting United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991).

Sconiers' primary argument is that seventy-one days passed between the time the Facebook videos were posted and the date on which he was arrested. (Doc. 22 at 24–25.) He complains that during that interim, officers did not obtain specific information indicating he was continuously

carrying a firearm nor that the weapon was being stored in the Porsche. (*Id*.) It is unclear how this could demonstrate that there was a lack of probable cause when the warrant issued on June 30, 2021, less than six weeks after the last Facebook videos were posted on May 14, and May 19, 2021. (*See* Ex. F at 5.) A recent Northern District of California case summarizes the caselaw on the question of staleness related to firearms possession.

> Although "information offered to support a search warrant application becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe ... that the items to be seized are still on the premises," *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (quotations omitted), "[o]ne may infer that equipment acquired to accomplish a crime will be kept for some period of time," *Crews*, 502 F.3d at 1140 (citation omitted). ***No Ninth Circuit case has held that probable cause to search for a firearm goes stale after seventeen days, and the case law suggests the opposite***. In ***United States v. Collins***, law enforcement searched Collins's home **six weeks** after receiving a tip that placed illegal firearms there. 61 F.3d 1379, 1384 (9th Cir. 1995). The tip, combined with older information regarding Collins's possession of firearms, was enough for probable cause. *See id*. at 1384–85 (collecting cases).

*United States v. Sembrano*, No. 19-CR-00651-CRB-1, 2020 WL 6684865, at *5 (N.D. Cal. Nov. 12, 2020) (emphasis added).

The search warrant affidavit, primarily through its reliance on Sconiers' own Facebook postings, contains information that specifically shows he possessed firearms inside the Porsche on at least three occasions and as late as May 19, 2021. (*Id*.) The court issued the warrant less than six weeks later. This gap in time does not render the information in the warrant inherently stale, particularly given Sconiers' repeated Facebook postings. The fact that the car was stopped on May 25, 2021, while being driven by Sconiers' girlfriend and neither he nor firearms were found in it, is not dispositive either, because the fact pattern revealed in the affidavit suggests that it was Sconiers who was inclined to possess firearms in the car, not Ms. Brown.

### iii. *Good Faith Reliance/ Request for a Franks Hearing*

To the extent the Court finds that the GPS warrant lacked probable cause, the government argues that the Court should decline to apply the exclusionary rule because the investigating officers relied in good faith on an objectively reasonable warrant. (Doc. 24 at 12); *see United States v. Leon*, 468 U.S. 897, 922 (1984) (suppression not appropriate where evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant). However, Defendant invokes the well-established exception to good-faith reliance that applies where "the magistrate or judge in issuing

9

a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware,* 438 U.S. 154 (1978)). Defendant requests a *Franks* hearing in connection with the GPS warrant. (Doc. 22 at 15.) The request is premised primarily upon one factual misstatement in the affidavit. Therein, Detective Leona indicated that the Porsche was registered to Defendant, when in fact it was registered to Defendant's father, Jack Zachary Sconiers, Jr.[3]

The standards applicable to such a challenge brought under *Franks* are well-established. "A defendant is entitled to an evidentiary hearing if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56); *United States v. Chavez Miranda*, 306 F.3d 973, 979 (9th Cir. 2002) (A defendant "bears the burden of proof and must make a substantial showing to support both elements.").

To be entitled to a *Franks* hearing, a defendant must come forward with specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and support that claim with a sufficient offer of proof. *Craighead*, 539 F.3d at 1080; *see also Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine."). Where such a substantial preliminary showing is made, "the court must hold a hearing to determine if any false statements [or omissions] deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause." *United States v. Johns*, 851 F.2d at 1133 (quoting *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987)). In contrast, where the defendant fails to make a "substantial preliminary showing" with

---

[3] Defendant also argues that Detective Leona asserts "without support" that Defendant was "known to drive" the purple Cayenne, while at the same time was aware that Defendant's girlfriend, Debra Brown, also drove the vehicle and was recently stopped while driving it. It is somewhat unclear whether Defendant advances this argument in support of his *Franks* hearing request. To the extent that he does, it is not a compelling argument. The affidavit acknowledges and, in fact, relies upon the fact that Debra Brown was driving the Porsche on occasion, pointing this out as an example of why it was difficult to locate Defendant through traditional surveillance of the Porsche. (Ex. F at 5)

10

respect to either intentional or reckless inclusion or omission, or materiality, the district court should not conduct a Franks hearing. *See United States v. Shryock*, 342 F.3d 948, 977 (9th Cir. 2003); *United States v. Bash*, No. 1:20-CR-00238-NONE-SKO, 2022 WL 992932, at *6 (E.D. Cal. Apr. 1, 2022) (refusing to hold *Franks* hearing where defendant failed to make a preliminary showing that omission of information was material).

### a. Intentional or Reckless Factual Mistake

There is no evidence before the court that even remotely indicates Detective Leona intentionally misrepresented the Porsche's registered owner in the GPS warrant affidavit. Defendant does, however, suggest that the statement was made with reckless disregard of the truth. (Doc. 22 at 15.) The Court need not engage in this issue in detail because even assuming Sconiers has made a substantial showing as to this element, he has not shown that the mistake was material.

### b. Materiality

The relevant inquiry on the materiality prong is whether the affidavit purged of the asserted falsities would support a finding of probable cause. *See Johns,* 851 F.2d at 1134. Here, Sconiers asserts that the "lack of nexus between the requested search and the evidence to be found" would have been "more apparent" if the warrant affidavit had disclosed that the Porsche was owned by Sconiers' father, rather than by him. (Doc. 22 at 15.)

Sconiers argues also that if the court knew "he was merely an itinerant driver of the vehicle," it would have rejected the warrant because "without the car being registered to [Sconiers], the warrant does not establish a likelihood that he would be in it!" (Doc. 26 at 6.) This argument is frivolous. It conflicts with his standing argument, and based on the information presented in the affidavit and the Facebook posts, the argument lacks any factual heft.

Though the search warrant affidavit indicated that Sconiers was "known to drive" the Porsche (Ex. F at 5), it also revealed that at least one other individual, namely his girlfriend, Debra Brown, was also known to drive the vehicle on occasion (*id.*). As a result, the circumstances already involved a vehicle that might be jointly possessed by persons other than Sconiers. The affidavit disclosed also that Sconiers had posted videos on Facebook of himself in the driver's seat of the Porsche holding firearms. The affidavit disclosed also that the Porsche was parked at Sconiers' father's house

occasionally address and that Sconiers' father was "known to be extremely hostile and uncooperative with law enforcement." (*Id.*) All this suggests that the result would have been the same had the affidavit been corrected to reveal that the Porsche belonged to Sconiers' father.

### C. Challenges to the Vehicle Search

Sconiers contends that even if the warrant was valid, his status as a probationer did not justify the search of the car.

#### i. Reasonable Suspicion

It is undisputed that Sconiers was on probation when the search of the Porsche occurred. As a condition of his probation, Sconiers must "submit to search and seizure." (Doc. 22-2 ("Ex. B" at 2.) It is also undisputed that under prevailing precedent, the terms of Sconiers' probation do not amount to consent to suspicionless searches; rather, any search must be based upon "reasonable suspicion."[4] *United States v. Knights*, 534 U.S. 112, 121 (2001) ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term "probable cause," a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable."). Reasonable suspicion exists when "specific, articulable facts together with objective and reasonable inferences, form the basis for suspecting that the particular person . . . is engaged in criminal activity." *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) (internal quotation marks and citation omitted).[5] "The reasonable suspicion analysis takes into account the totality of the circumstances," *id.*, and is intentionally abstract so that courts may give "due weight" to the factual inferences drawn by law enforcement officers. *United States v. Arvizu*, 534 U.S. 266, 273–77 (2002).

Sconiers argues that reasonable suspicion was lacking here because the information possessed

---

[4] The reasonable suspicion standard applies "only if the police had advance knowledge that the search condition applied before they conducted the search." *United States v. Caseres*, (9th Cir. 2008). The record here reveals that Detective Leona, who authored the GPS warrant and indisputably was aware of Sconiers' status as a probationer, was present at the arrest and search. (*See* Doc. 22-1 ("Ex. A").)

[5] Sconiers suggests that the relevant question is whether the officers who conducted the search reasonably suspected he was armed and dangerous at the time the search took place. (See Doc. 26 at 7.) Following this logic, Sconiers cites caselaw about furtive movements and other indications that might give rise to reasonable suspicion of that nature. (*See id.*) But Sconiers is a convicted felon and may not lawfully possess a firearm or ammunition *at all*. Sconiers engages in "unlawful activity" by merely possessing a firearm. It is not dispositive—or even relevant—whether his conduct at the time of the search threatened an immediate assault.

12

by the officers regarding potential criminal activity was not recent, specific, or particularized. (Doc. 26 at 6.) He argues also that the Facebook information was stale as of the date of the search on July 28, 2021. This was approximately one month after the court issued the GPS warrant and approximately ten weeks after the last Facebook posting directly linking him to possession of firearms in the Porsche. Likewise, the fact that ten weeks had passed from the last Facebook posting by the time the search occurred does not make the search unlawful. At the time of his arrest, the officers saw Sconiers driving the car depicted in the Facebook post and knew he had an active warrant for his arrest. (Ex. A at 3) Likewise, the vehicle registration was expired and "there was tint on the front side window." *Id*. This justified stopping the vehicle and arresting Sconiers, regardless of his probationer status.

Likewise, the police report authored by Detective Leona after Defendant's arrest describes the facts the officers at the scene took into consideration. (*See generally* Doc. 22-1 ("Ex. A").) As described in the GPS warrant, Defendant posted videos of himself holding firearms within the Porsche in May 2021. (*Id*. at 1.) In addition, Detective Leona explains that he was aware of other similar postings in February 2021 (F-17). The Court agrees with the government that "the fact that defendant continued to possess firearms, and on numerous occasions possessed a firearm within the Porsche Cayenne during an extended timeframe" gave rise to reasonable suspicion that defendant possessed a firearm within the vehicle on July 28, 2021. (Doc. 24 at 15.) Thus, for essentially the same reasons the court found probable cause to issue the GPS warrant, the Court finds reasonable suspicion existed to search the vehicle.

     ii. ***Inventory Search***

       a. ***Timeliness of the production of the inventory documents***

Sconiers objects to the Court considering the inventory documents because they were not produced earlier in discovery. He argues that the government was required by Rule 16 and Local Rule 440 to produce this document, but he doesn't explain why.[6] He has argued at length that the car does not belong to him and there is no suggestion that the items listed on the inventory were "obtained from or belong[ ] to [him]," or that they constitute "reports of examinations or tests," and there is no

---

[6] Sconiers describes the documents as "material" when arguing that they were required to be disclosed in discovery, but he fails to explain why.

13

indication that they are inculpatory or exculpatory—at least as far as the Court can see. The Court declines to speculate why Sconiers believes that this document was required to be produced in earlier discovery.

In any event, the government explains that the documents were not in the possession of the Fresno County Sheriff's Office, and they were obtained from the towing company as soon as it was discovered that they were not in the file. (Doc. 31 at 1) Moreover, counsel for Mr. Sconiers had a copy of the documents by the time of the hearing on his motion, and the Court granted him the opportunity to file further briefing. Thus, Sconiers has not demonstrated any prejudice caused by failure to produce the document at the same time as the government filed its brief.

### b. *The inventory was sufficiently thorough*

As an alternative justification for the search of the Porsche, the government argues that the firearm and magazine recovered from the vehicle would have been discovered inevitably during the inventory search of the vehicle after it had been towed. (Doc. 24 at 15.) To invoke the inevitable discovery rule, the government bears the burden of demonstrating by a preponderance of the evidence that the evidence would ultimately or inevitably have been discovered by lawful means. *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009). "To meet that burden in the context of an inventory search, the government must establish: (1) lawful impoundment of the vehicle; (2) standardized local inventory search procedure; and (3) compliance with that procedure." *United States v. Avendano*, 373 F. App'x 683, 684–85 (9th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 368–69, 375–76, (1976); *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993); *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989)).

It is undisputed that at the time of the stop on June 28, 2021, neither of the other occupants had a valid license to operate the vehicle, the car was subject to impoundment. *See* Cal. Veh. Code 22651(h) (allowing impoundment if "an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody"); *see also* Fresno County Sheriff's Office Policy ("FSO Policy") § 502.21 (docketed at Doc. No. 24-1). Fresno County Sherriff's Office policy provides a standard procedure for vehicle inventories, see FSO Policy § 502.4. The policy details,

14

> All property in a stored or impounded vehicle shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if closed and/or locked. Members conducting inventory searches should be as thorough and accurate as practical in preparing an itemized inventory. These inventory procedures are for the purpose of protecting an owner's property while in sheriff custody, to provide for the safety of deputies, and to protect the Office against fraudulent claims of lost, stolen, or damaged property.

(Doc. 24-1 at 4-5)

The police report detailed that the vehicle was impounded and documented the evidence seized from the car. (Ex. A at 14). The interior of the vehicle, including the possessions found there, was documented in the report, in photographs and on video. *Id*. at 4-5. The car's amenities and other property, e.g., radio, clock, jack, registration, were listed on the inventory form in addition to the condition of the items, e.g., indicating the spare tire was in "fair" condition." (Doc. 28 at 3) The other personal property found is listed as "Misc Clothes." *Id*.

Sconiers argues that the evidence of the inventory search should be precluded because there is no showing that the inventorying officers followed standardized procedures. (Doc. 29 at 5) He argues that the inventory failed to indicate whether there were tools to change a tire or a spare tire[7] found in the car (*Id*.), but, seemingly, missed that the boxes were checked next to "jack" and "fair" listed next to the condition of the spare tire. (Doc. 28 at 3) He argues the officers failed to note whether there were papers in the glove compartment or center console (Doc. 29 at 5), though, again, he seems to have missed that the inventory indicated that the registration was found in the car. (Doc. 28 at 3)

The Court agrees that the number and type of articles of clothing should have been listed, and it notes that there is no information about the wigs or condoms found. However, merely because every piece of property, even that with no value or that which constitute the general detritus often found on the floorboards of vehicles, was not listed, does not cause the Court to conclude that the search was not thorough or consistent with the policy. Indeed, the inventory of the car was documented on a pre-printed form intended to standardize the inventory. Though Sconiers suggests that there is no indication whether other items were found in the glove compartment or center console, officers are required to detail only what *was* found in the car and not what was not. In addition, photos and videos

---

[7]The Court takes judicial notice that the Porsche Cayenne is designed to store the spare tire and jack in the trunk compartment. (Fed.R.Evid. 201(b))

were taken also, which further fulfill the documentation required by the policy.

Sconiers suggests that because the original form was not retained by Fresno County Sheriff's Office that this should preclude reliance on the document but does not explain this bears on how the inventory was created or whether the searching officer adhered to policy. Finally, Sconiers' suggestion that the inventory search was a ruse to allow an unfettered search the car, ignores the reality of the situation. Neither the officers nor the government suggest that the weapons were located due to the inventory search. (Ex. A at 4)

Because the search was sufficiently thorough and followed a standardized methodology, the Court concludes that the gun and the ammunition would have been found inevitably during the inventory search.

### D. Evidentiary Hearing

Defendant requests an evidentiary hearing "[i]n the event the parties disagree over any pertinent facts, an evidentiary hearing is requested." (Doc. 22 at 26.) Here, the disputes are over the legal significance of the facts, not over the facts themselves. Therefore, an evidentiary hearing is not required. *See United States v. Mejia*, 953 F.2d 461, 466–67 (9th Cir. 1991).

## ORDER

Based upon the foregoing the Court **ORDERS**:

1. The motion to suppress (Doc. 22) is **DENIED**.
2. The Court sets a further status conference before Judge Oberto on February 1, 2023 at 1:00 p.m.[8]

IT IS SO ORDERED.

Dated:   **January 26, 2023**

UNITED STATES DISTRICT JUDGE

---

[8] The parties may stipulate, with an adequate time exclusion, to a different status conference date.